567 So.2d 1178 (1990)
Mary Lou MAPLES, Plaintiff-Appellee,
v.
MERRIMACK MUTUAL FIRE INSURANCE COMPANY, Defendant-Appellant.
No. 89-392.
Court of Appeal of Louisiana, Third Circuit.
October 3, 1990.
*1179 Gold, Weems, Bruser, Sues & Rundell, Henry Bruser, Alexandria, for plaintiff-appellee.
Gist, Methvin, Hughes & Munsterman, David Hughes, Alexandria, for defendant-appellant.
Before DOMENGEAUX, C.J., and FORET and KNOLL, JJ.
KNOLL, Judge.
Merrimack Mutual Fire Insurance Company (hereafter Merrimack) appeals an adverse jury finding that it was liable to Mary Lou Maples for personal injuries she received when she fell in the driveway of its insured, Madeline H. Baker. Merrimack contends that the jury was manifestly erroneous in: (1) concluding that the insured premises contained a legal defect which caused Maples' accident and resulting injuries; and, (2) concluding that Maples was not guilty of fault which caused her accident and injuries. We reverse and render.

FACTS
On October 30, 1986, Maples, a kindergarten teacher in Rapides Parish, visited Nelda Mitchell, the mother of one of her students, at the Mitchell residence in Pineville. Maples drove her automobile to the residence at approximately 5:30 p.m., while it was still daylight. She parked her vehicle near the sidewalk which leads from the unimproved circular driveway to the front door of the residence, walked behind her automobile to the front door, and entered the home. Maples stayed in the residence with Mitchell, and held a parent-teacher conference which lasted approximately thirty minutes.
When Maples left the residence at approximately 6:00 or 6:15 p.m., it was dark. She retraced her steps to the automobile, however, when she reached the rear of her car, she fell. Maples testified that although she did not know what made her fall, she "evidently stepped into some sort of hole." No one in the house witnessed the fall, and Maples did not make the residents aware of her fall that evening. Nevertheless, hospital records show that she was treated at Rapides General Hospital at approximately 6:30 p.m. that evening for a broken wrist.
*1180 The residence Maples visited is owned by Madeline H. Baker, a resident of Georgia, and managed by Robert Stark d/b/a Bob Stark Real Estate. At the time of the accident, the property was leased to Addie Savoy who occupied the residence with her three daughters. Mitchell, a friend of Savoy, and her daughter, Maples' student, were temporarily living in the house.
Although Maples originally sued Baker, Savoy, and Stark individually, at the time of trial these individuals had been dismissed, and trial proceeded only against Merrimack, Baker and Stark's insurer. Maples amended her petition for damages to delete her negligence action, choosing instead to rely only on the theory of strict liability. The Rapides Parish School Board intervened, seeking reimbursement for the worker's compensation benefits ($2,840.25) it paid Maples.
The jury found in Maples' favor, awarding her $35,657.35, and the trial court granted the School Board reimbursement for the amount of worker's compensation benefits it paid Maples.

STRICT LIABILITY
Merrimack first contends that the jury was clearly wrong in finding it strictly liable to Maples. It argues that even assuming that Maples fell in a hole or rut in the driveway, the premises did not contain a legal defect which was the cause of Maples' accident and resultant injuries.
In Thompson v. Ewin, 457 So.2d 303 (La.App. 3rd Cir.1984), writ denied, 460 So.2d 1043 (La.1984), we stated:
"In order to recover in strict liability under Article 2317, the injured person must prove that the premises posed an unreasonable risk of injury to others, and that his damage occurred through this risk. Upon proof of these elements, the owner is responsible for the damages, unless he proves that the damage was caused by the fault of the victim, by the fault of a third person, or by an irresistible force. Loescher v. Parr, 324 So.2d 441 (La.1975).
The unreasonable risk of harm criterion, however, is not a simple rule of law which may be applied mechanically to the facts of every case. Since Article 2317 states general precepts and not detailed rules for all concrete cases, it becomes the interpreter's duty to decide which risks are encompassed by the codal obligations from a standpoint of justice and social utility. Although a judge may be constrained by the concrete problem before him and the ambit of his limited authority, he nevertheless must consider the moral, social, and economic values as well as the idea of justice in reaching an intelligent and responsible decision. Entrevia v. Hood, 427 So.2d 1146 (La.1983).
The judicial process involved in deciding whether a risk is unreasonable under Art. 2317 is similar to that employed in determining whether a risk is unreasonable in a traditional negligence problem, except that a landowner is not absolved from strict liability by a showing of ignorance of the condition or by circumstances that the defect could not easily be detected. Entrevia, supra. Thus, after imputing knowledge of the condition to the landowner, we must determine whether the condition which existed presented an unreasonable risk of harm. This is determined by weighing the risk and gravity of harm against the social utility of the activity and the cost of prevention. Hunt v. City Stores, Inc., 387 So.2d 585 (La.1980)." (Emphasis added.)
Moreover, not every minor imperfection or irregularity will give rise to strict liability. The defect must be of such a nature to constitute a dangerous condition, which would reasonably be expected to cause injury to a prudent person using ordinary care under the circumstances. Koppie v. Commercial Union Insurance Company, 478 So.2d 179 (La.App. 3rd Cir. 1985), writ denied, 479 So.2d 922 (La.1985). In determining whether a given condition is unreasonably dangerous, the degree to which the danger may be observed by a potential victim who may then provide self-protection is a major factor. Also, property owners must keep their premises free of defects or conditions in the nature of hidden *1181 traps, dangers or pitfalls, which are not known to the visitor and which would not be observed by him in the exercise of reasonable care. Silliker v. St. Landry Parish Police Jury, 520 So.2d 880 (La.App. 3rd Cir.1987).
Mindful of our duty to reverse a jury's findings only if they are clearly wrong, we find, after carefully reviewing the record, that the jury was clearly wrong in its determination that the condition of the driveway constituted a legal defect under strict liability.
The only significant evidence offered at trial describing this alleged property defect was Maples' testimony, her husband's and several photographs taken of the approximate area in which Maples fell. Maples told the jury that it was very dark when she exited the house and that she cautiously crept toward her automobile. Nevertheless, she candidly testified that she had not noticed any holes in the general area of her fall when she first arrived at the house, and that she did not see what made her fall that evening. It was not until several weeks later, when she and her husband were walking through the neighborhood, that she saw terrible ruts in the driveway where she remembered parking on the evening of the accident. Maples did not detail the size of the ruts she later viewed. Instead, Maples relied on the insurance adjustor's photographs (P-4 through 8) taken approximately ten weeks after the accident, and her husband's corroborating testimony that when he returned to the scene several weeks after the accident, he saw "four to six inch type sets of tracks" in the approximate location of where she fell. Mr. Maples further stated on rebuttal that Defendant's Exhibit 2 and Plaintiff's Exhibit 8 probably reflected the condition of the driveway on the date that he and his wife returned to the property some weeks after the accident, with the exception that at least two additional sets of ruts, which he recalled being present, were not photographically depicted.
Assuming for purposes of argument that the ruts Maples observed were present on the night of the accident, we find their presence in an unimproved driveway neither unexpected nor out of the ordinary. Driveways of this nature have irregularities and depressions which result from their use as a passageway for vehicles. Such conditions do not amount to defects that present an unreasonable risk of injury to visitors.
Therefore we find that the jury was manifestly erroneous in its determination that the condition of the driveway presented an unreasonable risk of harm.
For the foregoing reasons, the judgment of the trial court is reversed and set aside. IT IS ORDERED, ADJUDGED, AND DECREED that there be judgment herein in favor of Merrimack Mutual Fire Insurance Company and against Mary Lou Maples, dismissing Maples' petition for damages with prejudice, as well as the Rapides Parish School Board's petition for intervention. Costs of the trial court and this appeal are assessed to Mary Lou Maples.
REVERSED AND RENDERED.